UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA      CRIMINAL NO. 2:07-cr-20069
                                    CIVIL ACTION NO. 2:11-cv-00842

VERSUS                                   JUDGE MELANÇON

HUGH SEBRON GRICE           MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Pending before this Court is Hugh Sebron Grice's *pro se* motion, brought pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence (Rec. Doc. 112). This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. The respondent was served and has filed an answer as well as a memorandum in response to the motion. For the following reasons, it is recommended that the motion be DENIED.

### FACTUAL BACKGROUND

In the early part of 2007, the defendant, Hugh Sebron Grice and his wife, Paula, were living in a small cabin owned by Grice's family members, which was located near DeQuincy in a rural part of Beauregard Parish, Louisiana. Grice was a

fugitive.  He had failed to appear in court in Calcasieu Parish, Louisiana in connection with felony methamphetamine charges, and there were outstanding warrants for his arrest.

In February 2007, two sheriff's deputies surveilled the cabin, observing smoke coming from the cabin's chimney, tanks behind the cabin, security cameras mounted on the exterior of the cabin, and a melted mini-blind.  These observations led them to conclude that a methamphetamine lab might be operating in the cabin.  Law enforcement officers also obtained information that Grice possibly had weapons, bomb-making materials, and ties to the Ku Klux Klan.

On the evening of March 20, 2007, a SWAT team approached the residence, while a bomb specialist with the Louisiana State Police was on standby.  The law enforcement officers made their presence known, and Grice opened the door and stepped out, smoking a marijuana cigarette.  Grice was brought outside, put on the ground, handcuffed, and searched.

Officers observed a woman inside the residence, and Grice told them she was his wife.  Officers entered the cabin, arrested Mrs. Grice, and conducted a protective sweep.  They observed a make-shift methamphetamine lab in the bathroom and noted a strong chemical smell in that room.  Because of the danger posed by the chemicals, the officers did not seize anything and limited the sweep to areas large enough to

conceal a person.  Grice advised the officers that there were things inside the cabin that might "blow," so the officers secured the house and posted an officer to guard it. Grice was *Mirandized*, and booked into the Beauregard Parish jail.

The next morning, Grice was again *Mirandized*, and he consented to a search of the cabin, again warning the officers that ether and other dangerous chemicals were present.  He admitted that he had manufactured methamphetamine there in the past, but claimed he had not done so recently.

Officers then conducted a search of his home.  They dismantled the lab and seized chemicals, glassware, and equipment used in the manufacture of methamphetamine.  The chemicals were turned over to the DEA for testing.  The officers also seized marijuana plants and paraphernalia related to marijuana, several assault rifles, some of which were fully automatic, machine guns, pistols, silencers, shotguns, a large amount of ammunition, four improvised bombs, four homemade grenades, and various other explosive materials.

On July 10, 2007, Grice was indicted[1] on ten counts, including manufacture and attempt to manufacture methamphetamine; possession of methamphetamine with intent to distribute; possession of paraphernalia, equipment, chemicals, products, and materials with intent to manufacture controlled substance; possession of marijuana

_____

[1]        Rec. Doc. 2.

with intent to distribute; possession of firearms during and in furtherance of drug trafficking crimes (Count 5); possession of unregistered destructive devices; possession of unregistered machine guns; possession of unregistered firearm silencers; possession of unregistered "other weapon;" and forfeiture of various items.

Grice contested the legality of the warrantless search of the cabin. He filed a motion to suppress,[2] and an evidentiary hearing was held on February 21, 2008.[3] The Magistrate Judge recommended that the motion be denied,[4] Grice objected;[5] and the District Judge denied the motion to suppress.[6]

On April 24, 2008, Grice executed a plea agreement,[7] and on April 28, 2008, he appeared before the district judge for a change-of-plea hearing.[8] In accordance with the plea agreement, Grice pleaded guilty to Count 5 of the indictment, and the other counts were dismissed. His counsel also negotiated a deal with state authorities, by which the pending state charges against him would be dropped and his wife would

---

[2]     Rec. Doc. 35.

[3]     Rec. Doc. 48.

[4]     Rec. Doc. 55.

[5]     Rec. Doc. 66.

[6]     Rec. Doc. 67.

[7]     Rec. Doc. 62.

[8]     Rec. Doc. 63.

not be prosecuted.  Grice's plea was conditioned upon his right to appeal the district court's ruling on the motion to suppress.  Had his appeal resulted in the district court's ruling being overturned, he would have been able to withdraw his plea and proceed to trial.[9]

Grice soon had second thoughts about his plea.  Although he was represented by court-appointed counsel, he filed a *pro se* affidavit objecting to the presentence investigation report and incorporating a motion to withdraw his plea on the basis that he "did not accept the factual basis of my plea agreement."[10]  He also filed a *pro se* "petition preserving insufficient evidence claims," in which he argued that there was an insufficient factual basis for his plea.[11]  In addition, he filed a *pro se* "supplemental memorandum,"[12] in which he again objected to the presentence investigation report. The government filed a motion to strike and/or dismiss Grice's *pro se* pleadings.[13] The district court denied the motion to withdraw the guilty plea,[14] denied Grice's

---

[9]     Rec. Doc. 63 at 3, 24.

[10]     Rec. Doc. 70 at 2.

[11]     Rec. Doc. 81.

[12]     Rec. Doc. 83.

[13]     Rec. Doc. 84.

[14]     Rec. Doc. 102 at 44, 48-49.

objections to the presentence investigation report,[15] and prohibited Grice from filing any further *pro se* pleadings without leave of court.[16] Grice was then sentenced to thirty years in prison, the statutory minimum allowable sentence.[17]

Grice appealed the district court's ruling on the motion to suppress, and the appeals court affirmed the district court's ruling that denied the motion to suppress.[18] Grice then filed this *habeas corpus* motion.[19]


## ANALYSIS

Grice now seeks to vacate, set aside, or correct his sentence. In his motion, he contends, first, that his guilty plea was not voluntary because he was misinformed as to the factual basis for the crime of which he was convicted. Second, he contends that he had ineffective assistance of counsel at the change-of-plea hearing because his counsel never attempted to ascertain whether the factual predicates of the crime he admitted to were satisfied, did not fully inform him of the nature of the charges, and did not otherwise challenge the crime of which he was convicted. Third, he contends

---

[15]     Rec. Doc. 102 at 54.

[16]     Rec. Doc. 102 at 13-14.

[17]     Rec. Doc. 102 at 60.

[18]     Rec. Doc. 111.

[19]     Rec. Doc. 112.

that the district court judge improperly participated in plea negotiations during the change-of-plea hearing.

## I.   THERE WAS A SUFFICIENT FACTUAL BASIS FOR THE PLEA.

Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  The factual basis for a guilty plea must be in the record, and it must be sufficiently specific to allow the court to determine whether the defendant's conduct is within the ambit of the relevant statute's prohibitions.[20]  The district court must compare the elements of the offense charged against the conduct that the defendant admits.[21]  Accordingly, when the district court judge accepted Grice's plea in this case, he implicitly determined that Grice's admitted conduct satisfied every element of the crime set forth in Count 5 of the indictment.

Grice now argues, however, that his plea of guilty to Count 5 of the indictment was not knowing and voluntary because the stipulated factual basis for the plea is insufficient to establish that his possession of firearms actually furthered a drug

---

[20]     *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012); *United States v. Angeles–Mascote*, 206 F.3d 529, 530 (5th Cir. 2000); *United States v. Gobert*, 139 F.3d 436, 439 (5th Cir. 1998).

[21]     *United States v. Broussard*, 669 F.3d at 546; *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001).

trafficking crime.  He seems to be arguing, based on his statements that he merely possessed a "firearm collection"[22] and "used to manufacture methamphetamine at one time at this place,"[23] that the government failed to prove, at the change-of-plea hearing, that his actions on the day of his arrest actually constituted the crime of possession of firearms during and in furtherance of drug trafficking crimes.  But the government was not required to prove anything at the hearing, and Grice stipulated to conduct, set forth in the stipulated factual basis for the plea and reiterated during the change-of-plea hearing, that satisfied all of the elements of the crime.

Grice's argument rests on the difference between merely possessing firearms and possessing firearms in violation of the relevant statute.  He contends that "the conduct to which Grice admitted does not constitute the crime of possessing a firearm in furtherance of a drug trafficking offense"[24] and also contends that "the firearms found on March 21, 2007, were there  coincidentally  . . . were entirely unrelated to the drugs and . . . did not facilitate the drug activity. . . ."[25]

---

[22]     Rec. Doc. 63 at 15.

[23]     Rec. Doc. 112-1 at 40.

[24]     Rec. Doc. 112-1 at 2.

[25]     Rec. Doc. 112-1 at 43.

In support of this position, Grice relies on *United States v. Ceballos-Torres.*[26] In that case, the defendant was charged with the same crime that Grice was charged with – possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c).  The defendant argued that the words "in furtherance" require more than the mere presence of a firearm in an area where drug trafficking occurred, and the court agreed, finding that firearm possession that "furthers, advances, or helps forward the drug trafficking offense violates the statute."[27]  The court identified several factors that might help determine whether a particular defendant's possession satisfies the statute, including:  the type of drug activity being conducted; the accessibility of the firearm; the type of weapon involved; whether the weapon was stolen, illegal, or loaded; the proximity of the firearm to the drugs or drug profits; and the time and circumstances under which the gun was found.  In that case, the court concluded that the defendant's possession of a single weapon did further his drug trafficking operation because the gun was owned by the defendant, loaded, easily accessible, possessed illegally, kept close to a substantial amount of drugs and money, and protected the guns and money against robbery.

---

[26]     *United States v. Ceballos-Torres,* 218 F.3d 409 (5th Cir. 2000).

[27]     *United States v. Ceballos-Torres*, 218 F.3d at 415.

In Grice's case, the plea package contained a separate document listing the elements of the offense.  It defines the types of possession of firearms necessary to satisfy the statute, as follows:

> The possession of firearms, including machineguns, firearms silencers, destructive devices and other firearms in such a manner as to make the firearms available for security purposes should the need arise, during the commission of a felony drug offense, whether to protect yourself, or to deter thieves or robbers from stealing drugs, money, or other things of value used as barter or exchanged in payment for drugs, or intended to be used to manufacture drugs, constitutes the possession of firearms in furtherance of drug trafficking crimes for purposes of this provision of the law.[28]

This same definition was read aloud by the district court judge at Grice's change-of-plea hearing.  The undersigned finds that this definition is consistent with the ruling in the *Ceballos-Torres* case.  After this definition was read aloud at the hearing, Grice was asked: "do you understand the charge in Count 5. . . .?"  He replied, "Yes, sir."[29]

The stipulated factual basis for the guilty plea, which Grice signed prior to the hearing, describes the firearms that Grice possessed and states that:

---

[28]     Rec. Doc. 62-3 at 2.

[29]     Rec. Doc. 63 at 14.

The firearms were in various locations all over the cabin in places that made the firearms easily accessible and available for Grice to use for security purposes, should the need arise, to protect himself, and to deter burglars, robbers and thieves from taking or attempting to take any items from the clandestine drug laboratory, including methamphetamine product, marijuana, including plants and manicured marijuana, as well as any related items of value of any description which were used or intended for use, in the manufacture (cultivation) of marijuana, or the manufacture or possession of methamphetamine, or other illegal activities related to or involving the manufacture (cultivation) of marijuana, or the manufacture of methamphetamine.[30]

These facts are consistent with those found in the *Ceballos-Torres* case to support a conviction on the crime charged. Grice signed the stipulated factual basis for his plea,[31] he stated in open court that everything in the stipulated factual basis for the guilty plea is true and correct,[32] and he admitted that he committed this crime.[33]

"Solemn declarations in open court carry a strong presumption of verity."[34]

Therefore, when a defendant is sworn in at a change-of-plea hearing and pleads guilty

---

[30]    Rec. Doc. 62-2 at 2-3.

[31]    Rec. Doc. 62-2 at 3.

[32]    Rec. Doc. 63 at 35.

[33]    Rec. Doc. 63 at 29.

[34]    *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

to a crime, his representations are presumed to be true.[35]  Similarly, any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight."[36]

During the change-of-plea hearing, Grice was repeatedly given the opportunity to contest the facts contained in the stipulation.  The only facts he objected to concerned the amount of methamphetamine and marijuana found during the search of the cabin.  His counsel attempted to clarify for the court that Grice disagreed with the DEA's mathematics and calculation of the amount of meth that could be produced from some of the chemicals seized from the cabin.  After confirming that the DEA calculations did not constitute any element of the offense and would have no effect on Grice's sentence, the judge suggested that the disputed language be removed.  The government agreed, and a sentence was stricken from the stipulated factual basis.[37]  Notably, however, Grice did not object to any of the facts related to the weapons that were found at the cabin.

---

[35]    See, e.g., *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) ("We consider plea colloquies '[s]olemn declarations in open court' which 'carry a strong presumption of verity.'"); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).

[36]    *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

[37]    Rec. Doc. 62-2 at 2; 63 at 30-34.

To the contrary, Grice signed the written stipulated factual basis, which lists the firearms found in the cabin and states that "[t]he firearms were. . . easily accessible and available. . . for security purposes. . . to protect himself, and to deter burglars, robbers and thieves. . . ."[38] In open court while under oath before the district court judge, he also admitted the facts necessary to his being found guilty of the crime charged in Count 5 of the indictment. After the revision concerning drug amounts was made, Grice was asked, "Is everything in the stipulated factual basis for the guilty plea true and correct?" He answered, "Yes, sir."[39] Shortly thereafter, he was asked, "Mr. Grice, do you have any disagreement with the stipulated factual basis?" He responded, "No, sir."[40]

Accordingly, the undersigned cannot accept Grice's belated attempt to disavow the accuracy and truthfulness of the facts set forth in the stipulated factual basis for the plea and acknowledged by Grice at the hearing. The undersigned finds that the record demonstrates that a sufficient factual basis for the crime was set forth in the written stipulation and reiterated orally at the hearing, that Grice understood the

---

[38]   Rec. Doc. 62-2 at 2.

[39]   Rec. Doc. 63 at 35.

[40]   Rec. Doc. 63 at 36.

elements of the crime, that Grice admitted facts supporting all of the elements of the crime, and that Grice's plea was knowing and voluntary.  This issue lacks merit.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[41]  When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.[42]  The right to effective counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."[43]

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate:  (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient

---

[41]        *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[42]        *Johnson v. Zerbst*, 304 U.S. 458, 469 (1938); *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).

[43]        *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

performance prejudiced the defendant.[44]   The defendant bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim.[45]  The parts of the test need not be analyzed in any particular order, and there is no need to consider the remaining part once an insufficient showing has been made concerning the other one.[46]

In analyzing the professional competence part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time."[47]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[48]

To satisfy the prejudice part of the test, the defendant must demonstrate that his attorney's actions or inactions were "so serious as to render the proceedings

---

[44]     *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[45]     *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 280 (5th Cir. 1997).

[46]     *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998).

[47]     *Strickland v. Washington*, 466 U.S. at 689.

[48]     *Strickland v. Washington*, 466 U.S. at 689.

unreliable and fundamentally unfair."[49]  "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding

if the error did not prejudice the defense."[50]  Prejudice is demonstrated only if "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."[51]

A petitioner's allegations of ineffective assistance of counsel must be supported

by the record,[52] and bald, conclusory allegations are insufficient.[53]  In this case,

however, there is no evidence other than Grice's allegations that his counsel provided

ineffective assistance at the change-of-plea hearing.  At the hearing, Grice was

represented by attorney Kay Karré Gautreaux.  Ms. Gautreaux explained that she

---

[49]     *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994).  See, also, *United States v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994), citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[50]     *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984).

[51]     *Strickland v. Washington*, 466 U.S. at 694.

[52]     *United States v. Johnson*, 679 F.2d 54, 58 (5th Cir. 1982).

[53]     *United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001); *United States v. Flores*, 135 F.3d 1000, 1006-07 (5th Cir. 1998).

spent approximately five hours discussing the plea agreement with him before the hearing.[54]

It is undisputed that Grice pleaded guilty to Count 5 of the indictment.[55]  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review."[56] Grice argues, however, that his plea was not voluntary because he did not understand the necessary factual predicate for the crime to which he pleaded guilty.  He further contends that he lacked this understanding because of the ineffectiveness of his counsel at change-of-plea hearing.

By entering a voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings, including claims of ineffective assistance of counsel except to the extent that his counsel's ineffectiveness allegedly rendered the guilty plea involuntary.[57]  Grice must prove both that his trial counsel's performance was

---

[54]      Rec. Doc. 63 at 35.

[55]      Rec. Doc. 63 at 29.

[56]      *Deville v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 436 (1994), quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *modified on other grounds*, 646 F.2d 902 (5th Cir.), *cert. denied*, 454 U.S. 840 (1981).

[57]      *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), citing *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991).

objectively unreasonable when measured against prevailing professional norms and also that he was prejudiced by his trial counsel's actions or omissions.[58]  To prove that he was prejudiced by the alleged ineffectiveness of his trial counsel with regard to his entry of guilty plea, a *habeas* petitioner such as Grice must demonstrate that there is a reasonable probability that, but for his trial counsel's errors, he would not have pleaded guilty and would, instead, have insisted on going to trial.[59]

When a defendant appears in open court and engages in a plea colloquy with the court, the defendant's attestations regarding voluntariness are not an absolute bar to his later asserting a claim that the plea was coerced, but the defendant faces a heavy burden in proving that he is entitled to relief because the testimony in open court carries a strong presumption of verity.[60]  A review of the plea colloquy demonstrates that Grice's concerns were addressed during the hearing, and he voluntarily pleaded guilty.

The judge specifically asked Grice the following question:

THE COURT:          Has anyone threatened you, leaned on you, or forced you to plead guilty, or told you that if you do not plead guilty further charges will be brought against

---

[58]     *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

[59]     *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008); *Bond v. Dretke*, 384 F.3d 166, 167-68 (5th Cir. 2004); *Hill v. Lockhart*, 474 U.S. at 59.

[60]     *DeVille v. Whitley*, 21 F.3d at 659, citing *Blackledge v. Allison*, 431 U.S. at 74.

-18-

you or that other adverse action will be taken against you?

Grice responded by explaining the concessions being made by state and federal authorities in exchange for his plea.[61]  The government's counsel then reviewed the plea agreement,[62] and Grice indicated that he understood the plea agreement, had ample time to review it with his counsel, and had no questions about it.[63]

Additionally, during the hearing, Grice was expressly asked about Ms. Gautreaux's representation:

THE COURT:             Now, Mr. Grice, have you had ample opportunity to discuss your case with Ms. Gautreaux?

THE DEFENDANT:     Yes, sir, I have.

THE COURT:             And have you been satisfied with Ms. Gautreaux's representation of you up until today?

THE DEFENDANT:     Yes, sir.  She's defended me to the best of her ability.  Yes, sir.

THE COURT:             And are you satisfied to have her represent you here today?

THE DEFENDANT:     Yes, sir.[64]

---

[61]     Rec. Doc. 63 at 20-23.

[62]     Rec. Doc. 63 at 23-25.

[63]     Rec. Doc. 63 at 26.

[64]     Rec. Doc. 63 at 9.

After reviewing the substance of the plea agreement with him, the district court judge again questioned Mr. Grice, as follows:

THE COURT: Now, before you and your lawyer signed that Plea Agreement which has been filed in the record of this proceeding, did you have the opportunity to go over it with Ms. Gautreaux?

THE DEFENDANT: Yes, sir.

THE COURT: Was she able to answer any questions you might have had about the Plea Agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about the Plea Agreement?

THE DEFENDANT: No, sir.[65]

Later, however, when the district court judge asked Grice if everything in the stipulated factual basis was true, he indicated a "disparity" with regard to the drug amounts listed.[66] Ms. Gautreaux's comments demonstrate that she was familiar with these claimed "disparities" and had previously discussed them with Grice.[67] She agreed to strike certain language from the plea agreement that was not material to the plea, and she reminded Grice that the plea agreement had already been revised with

---

[65]     Rec. Doc. 63 at 26.

[66]     Rec. Doc. 63 at 30, 33.

[67]     Rec. Doc. 63 at 30-34.

-20-

regard to another of his concerns.[68]   After the language that Grice objected to was stricken,[69] Grice was given an opportunity to confer with his counsel,[70] and he then stated that everything in the stipulated factual basis for the guilty plea was true and correct.[71]   At that point, Ms. Gautreaux explained that she and Grice had met for "probably a total of five hours or more on this,"[72] discussing the contents of the stipulated factual basis for the plea.  Both Ms. Gautreaux and Grice indicated that they had had enough time to discuss the changes that were made to the document during the hearing.[73]  Grice then again stated that he had no disagreement with the stipulated factual basis.[74]   The court then accepted his guilty plea.[75]   Thus, the discussion held on the record during the plea hearing shows that Grice was satisfied with his counsel's representation prior to the hearing, that Grice's counsel was prepared for the hearing, that Grice's counsel offered assistance and advice to her

---

[68]      Rec. Doc. 63 at 32-33.

[69]      Rec. Doc. 63 at 32.

[70]      Rec. Doc. 63 at 34-35.

[71]      Rec. Doc. 63 at 35.

[72]      Rec. Doc. 63 at 35.

[73]      Rec. Doc. 63 at 35.

[74]      Rec. Doc. 63 at 36.

[75]      Rec. Doc. 63 at 36.

client during the hearing, and that Grice was satisfied with the assistance provided during the hearing.

In addition to the testimony given at the change-of-plea hearing, Grice also signed a written plea agreement[76] and an affidavit of understanding of maximum penalty.[77]  Like his testimony in open court concerning the voluntariness of his plea, these documents must be accorded great evidentiary weight.[78]  Both the statements made during the plea colloquy and the signed documents support the conclusion that Grice's plea was voluntary.  Even when a defendant's trial counsel renders totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.[79]  The voluntariness of a plea can be demonstrated by showing that the defendant understood the charge and the consequences that would befall him should he plead guilty.[80]

During the change-of-plea hearing, the district court judge explained the elements of the crime with which Grice was charged then specifically asked him:

---

[76]     Rec. Doc. 26.

[77]     Rec. Doc. 27.

[78]     *United States v. Abreo*, 30 F.3d at 32.

[79]     *DeVille v. Whitley*, 21 F.3d at 659, citing *United States v. Diaz*, 733 F.2d 371, 376 (5th Cir. 1984), and *Diaz v. Martin*, 718 F.2d 1372, 1379 (5th Cir. 1983).

[80]     *DeVille v. Whitley*, 21 F.3d at 657.

"Now, do you understand the charge in Count 5, Mr. Grice?"  His response was "Yes, sir."[81]  Similarly, the district court judge explained the consequences of the plea – both the minimum and maximum sentences for the crime and the consequences other than the period of incarceration – and Grice again stated that he understood the consequences.[82]  Thus, the face of the transcript of the change-of-plea hearing shows that Grice understood the charge and the consequences.  Consequently, his plea was voluntary.

In this case, the written plea agreement, the written affidavit of understanding of maximum penalty, and the plea colloquy all support the conclusion that Grice voluntarily pleaded guilty.  They indicate that he understood the charges against him, understood the consequences that might befall him, and made the plea freely.  He has presented no evidence to support his claim that his plea was induced by his counsel's failure to fully explain to him the factual precedents for the crimes with which he was charged.  Therefore, the undersigned finds that Grice's plea was freely given, rendering any ineffective assistance of his trial counsel concerning the plea immaterial.  The undersigned further finds that Grice has not proven that his counsel's conduct at the change-of-plea hearing fell below an objective standard of

---

[81]     Rec. Doc. 63 at 14.

[82]     Rec. Doc. 63 at 19-20.

reasonableness or that he would not have pleaded guilty at the hearing had his attorney's performance at the hearing been different.  In sum, the undersigned finds that this issue lacks merit.

### III.   JUDICIAL PARTICIPATION IN THE PLEA NEGOTIATIONS

Grice contends that, during the change-of-plea hearing held on April 28, 2008, the district court judge participated in the negotiation of the plea agreement in violation of Rule 11 of the Federal Rules of Criminal Procedure.  The rule states in pertinent part that "[a]n attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement.  The court must not participate in these discussions."[83]  The rule requires, however, that the district court judge must, before accepting a guilty plea, address the defendant personally in open court to be sure that the defendant understands his rights, the nature of the charges, and the penalties to be imposed.  The judge must also ensure that the plea is voluntary and determine that there is a factual basis for the plea.  The courts have interpreted Rule 11 to mean that a "district court is absolutely prohibited from participating in plea negotiations."[84]  Therefore, a district court judge can

---

[83]     Fed. R. Crim. P. 11(c)(1).

[84]     *United States v. Smith*, 417 F.3d 483, 488 (5th Cir. 2005); *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993).

explore a plea agreement that has been disclosed in open court and state the court's reasons for rejecting a plea agreement, but he cannot discuss a hypothetical agreement that he might prefer or suggest a plea agreement that might be acceptable.[85]  "The proper inquiry is whether the district court was actively evaluating a plea agreement, as the court is required to do, or whether the court is suggesting an appropriate accommodation for a subsequent plea agreement," which is prohibited.[86]

Grice contends that, during the change-of-plea hearing, the district court judge encouraged the parties to strike certain language from the plea agreement in order to encourage the plea in violation of Rule 11.  Grice further contends that "his change of heart from his initial rejection of the guilty plea to the subsequent decision to plead guilty occurred directly on the heels of the district court's participatory comments."[87]  That, however, is not reflected in the plea colloquy or in the documents constituting the plea package.

As a threshold matter, it should be noted that Grice signed the plea agreement on April 24, 2008, four days before the change-of-plea hearing.  Thus, he had decided to plead guilty before the date of the hearing – not during the hearing.  Furthermore,

---

[85]     *United States v. Smith*, 417 F.3d at 488, citing *United States v. Miles*, 10 F.3d at 1139.

[86]     *United States v. Crowell*, 60 F.3d 199, 203 (5th Cir. 1995).

[87]     Rec. Doc. 112-1 at 32.

he did not just sign one document in connection with the plea.  In addition to signing the plea agreement on April 24,[88] he also signed an affidavit of understanding of the mandatory minimum sentence, maximum sentence, and constitutional rights.[89]  On April 26, he signed a stipulated factual basis for the guilty plea.[90]  It is, therefore, clear that Grice decided to plead guilty before the change-of-plea hearing was held.

At the hearing, however, Grice attempted to plead *nolo contendere* rather than guilty.  The district court judge informed him that this was not possible and explained that either Grice would plead guilty or the trial would start the next day.[91]  The court did not encourage either course of action.  The court immediately offered Grice an opportunity to talk with his counsel, but Grice stated that he was willing to proceed with the plea.[92]  When asked again if he was ready to plead guilty to Count 5 of the indictment, Grice stated that he was.[93]

The hearing proceeded until the point at which the stipulated factual basis for the plea was discussed.  The court asked Grice if everything in the stipulated factual

---

[88]     Rec. Doc. 62.

[89]     Rec. Doc. 62-1.

[90]     Rec. Doc. 62-2.

[91]     Rec. Doc. 63 at 5.

[92]     Rec. Doc. 63 at 5.

[93]     Rec. Doc. 63 at 39.

basis was true.  Grice replied:  "I have some disparity on the drug amounts and what the connection of some of the paraphernalia and the firearms."[94]  The judge said: "Well, I can't proceed until we get that disparity cleared up."[95]  The judge did not engage in plea negotiations, did not dictate the outcome of any subsequent plea negotiations, or specifically state what the contents of the plea agreement would need to be.  Instead, the district court judge merely ascertained whether Grice was going to plead or go to trial.  The transcript is clear.

After Grice indicated that he had a "disparity" with regard to the stipulated factual basis for the plea, the court asked counsel to explain the problem, which related to the quantity of methamphetamine found at Grice's cabin.  Counsel agreed that the language Grice found objectionable did not affect the plea.[96]  The judge then said:  "Strike it and then we'll talk about what's left, okay, and I'll look at it.  I want what's stricken to be initialed by you, Ms. Gautreaux, and Mr. Grice."[97]  Discussion was then held off the record between Grice and his counsel.  Grice then informed the

---

[94]     Rec. Doc. 63 at 30.

[95]     Rec. Doc. 63 at 30.

[96]     Rec. Doc. 63 at 31-32.

[97]     Rec. Doc. 63 at 32.

court that he also had a "disparity" concerning the amount of marijuana referred to in the stipulated factual basis for the plea.  The court responded as follows:

THE COURT:  Mr. Grice, let me just say this:  If you want to proceed with picking – I think that we pick the jury tomorrow, Mr. Lacour?  Whatever I said, I will do that if you can't agree to what the deal is, because this is a deal that's going to have, you know, adverse effect on you, but I'm not about to take your guilty plea unless you say, "Judge, every single word in that stipulated factual basis is true and correct, and I admit it."  If you can't do that, then we'll have a trial.

Grice's counsel then pointed out to Grice that his concern about the marijuana had already been addressed.  The court then asked:

THE COURT:  Do you not want to plead guilty here today?  Because I'll just say we'll shut it down, we'll do the trial tomorrow.  That's fine with me.  But you can't be up here trying to negotiate the plea with either the Government or the Court right now after your lawyer's done.  And you said you were satisfied with her.

THE DEFENDANT:  Okay.

THE COURT:  So "okay" what?  You want to stop or you want to go forward?

THE DEFENDANT:  Go forward.

THE COURT:  All right.

-28-

This exchange indicates that the judge was not attempting to negotiate the plea but was, instead, cautioning Grice that Grice could not negotiate a new deal at the hearing or engage the judge in plea negotiations.

The court then ascertained that Grice had been afforded an ample opportunity to discuss the changes to the stipulated factual basis with his counsel and that the changes had been made to his satisfaction.[98]   The court then again asked:  "Is everything in the stipulated factual basis for the guilty plea true and correct?"  Grice stated: "Yes, sir."[99]  Just a few moments later, the court again asked: "Mr. Grice, do you have any disagreement with the stipulated factual basis?"  His response was: "No, sir."[100]  The judge then accepted Grice's plea.[101]

In this case, the district court did not interfere with ongoing plea negotiations, since the plea agreement was set forth in writing and the documents comprising the plea agreement were signed two to four days prior to the change-of-plea hearing. During the hearing, the judge did not specify that anything was or was not to be included in the plea agreement.   He merely permitted Grice to delete some

---

[98]     Rec. Doc. 63 at 35.

[99]     Rec. Doc. 63 at 35.

[100]     Rec. Doc. 63 at 36.

[101]     Rec. Doc. 63 at 36.

objectionable language from the stipulated factual basis and made sure that Grice was ready to plead.

Accordingly, the undersigned finds that the district court judge did not run afoul of Rule 11's prohibition against judicial participation in a plea agreement.  This issue lacks merit.


## Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Grice's motion to vacate, set aside, or correct his sentence (Rec. Doc. 112) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this report and recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of its service, or within the time frame authorized by

Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 29th day of May 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE