UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:07-CR-20069-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SANCTIONED/BARRED HUGH SEBRON GRICE (01)** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion for Compassionate Release [doc. 151] filed by defendant Hugh Sebron Grice, who is currently serving a term of imprisonment pursuant to a judgment of this court. The government opposes the motion. Doc. 157.

### I.
### BACKGROUND

On March 20, 2007, deputies with the Beauregard Parish Sheriff's Office ("BPSO") executed an arrest warrant for the defendant at his residence near DeQuincy, Louisiana. Doc. 62, att. 2. Before executing the warrant the deputies had received information that the residence was equipped with several security cameras and that the defendant possibly possessed bombs and bomb-making equipment in the house. PSR ¶¶ 15, 16. They had also observed indicia of methamphetamine manufacturing around the outside of the residence. PSR ¶ 16. Based on this intelligence, the BPSO used a SWAT team to execute the warrant. PSR ¶ 15.

During the arrest deputies located an assortment of drug manufacture paraphernalia and equipment in and around the defendant's residence, which the defendant used in the

-1-

manufacture of methamphetamine, as well as marijuana stored in plastic bags as if prepared for distribution and marijuana plants growing in the yard next to the residence. Doc. 62, att. 2. The defendant and his wife were both found inside the dwelling where the meth lab was located. PSR ¶ 17.

Also inside the residence were four machine guns, one of which was equipped with a suppressor, along with three additional suppressors, fifteen other firearms, explosives, and explosive material (including at least four improvised explosive devices ["IEDs"]). Doc. 62, att. 2. Three of the machine guns were modified to fire automatically. PSR ¶ 5. The various firearms and explosives were positioned in various locations that made them easily accessible to the defendant to use in protecting himself and deterring others from accessing the clandestine meth lab. Doc. 62, att. 2. The defendant admitted that the homemade explosives and modified firearms were there at least in part to protect himself. PSR ¶ 19.

The defendant was charged in a 10-count indictment on July 10, 2007. Doc. 1. On April 28, 2008, he pled guilty to Cunt 5 (possession of firearms during and in furtherance of drug trafficking crimes, a violation of 18 U.S.C. §§ 924(c)(1)(A) and (B)(ii)). Doc. 61. On February 12, 2009, he was sentenced to a mandatory minimum 360 month term of imprisonment. Doc. 86; *see* PSR ¶ 53. The defendant has served approximately 141 months of his sentence and has an estimated release date of October 10, 2032.

On May 11, 2020, the defendant filed his first motion for compassionate release based on fear of COVID-19. Doc. 144. Because he had not exhausted his administrative remedies, the court ordered that the motion be dismissed without prejudice. Doc. 149. On

October 30, 2020, the defendant filed a second motion. Doc. 151. He now asserts proper exhaustion of his administrative remedies and maintains that he is entitled to compassionate release because certain preexisting conditions (obesity and type II diabetes) put him at an increased risk of severe illness or death. The government opposes the motion, conceding that the defendant has exhausted his remedies and that the risk of COVID-19 exposure may form an extraordinary circumstance warranting compassionate release. Doc. 157. It maintains, however, that such relief should be denied because the defendant has not met his burden of showing eligibility under the factors set forth under 18 U.S.C. § 3553(a) and that he is not a danger to the community. Doc. 157.

## II.
## LAW & APPLICATION

A sentence of imprisonment may only be modified by the district court in limited circumstances. *Dillon v. United States*, 560 U.S. 817, 825 (2010). The court may reduce a term of imprisonment for "extraordinary and compelling reasons" so long as they are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Following passage of the First Step Act in 2018, inmates may use this provision to directly petition the court for compassionate release. The court may only act, however, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, the inmate is required to exhaust his administrative remedies with the BOP

before bringing such a request to the court and exhaustion is a jurisdictional prerequisite for the court's ability to grant relief. *See, e.g.*, *United States v. Johnson*, 2020 WL 1663360, at *3–*6 (D. Md. Apr. 3, 2020); *United States v. Koons*, 2020 WL 1940570 (W.D. La. Apr. 21, 2020).

The defendant shows that he filed a request for compassionate release with the warden at FCI Beaumont, citing his medical conditions of obesity and Type II diabetes and his fear of contracting COVID-19. Doc. 151, att. 1, p. 1. He also shows that this request was denied on July 2, 2020. *Id.* at 2. Accordingly, the request is exhausted and the court may consider the new motion.

In support of his motion, defendant attaches medical records supporting the above claims. Doc. 151, att. 4. The government notes that these conditions are currently managed with BOP care and that managed medical conditions ordinarily do not provide a basis for compassionate release. Doc. 157, pp. 12–13; *see* BOP Prog. Statement 5050.50. It acknowledges, however, that this statement and other case law cited in reference to chronic conditions do not reflect present concerns about the COVID-19 pandemic. Several courts have found that the pandemic may present an extraordinary and compelling circumstance warranting compassionate release, particularly in the case of a defendant who is at risk for severe illness by reason of preexisting medical conditions. *See United States v. Mazur*, __ F.Supp.3d __, 2020 WL 2113613, at *4 (E.D. La. May 4, 2020) (collecting cases); *see also United States v. Furlow*, 2020 WL 3967719 (W.D. La. Jul. 13, 2020); *United States v. Malone*, 2020 WL 3065905 (W.D. La. June 9, 2020).

The government concedes that obesity and diabetes have been recognized by the CDC as COVID-19 risk factors. Doc. 157, pp. 1, 11. Nevertheless, it maintains that the motion should be denied due to Mr. Camacho's criminal history, potential danger to others in the community, and the limited amount of his lengthy sentence served.

Even where the defendant has demonstrated that he is eligible for compassionate relief based on extraordinary circumstances, the court is also required to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) contains factors that the court must consider in determining the length of a sentence, including (1) to reflect the seriousness of the offense, (2) to afford adequate deterrence of criminal conduct, and (3) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

Here the circumstances surrounding defendant's conviction show that he is a dangerous individual. He operated a clandestine methamphetamine laboratory and armed himself to the hilt to protect it. These actions are targeted by a criminal statute carrying a lengthy mandatory minimum sentence, and the defendant has served only half of that sentence. A reduction here would promote disparity with respect to similarly situated defendants. Additionally, there is no evidence of his rehabilitation. Finally, the court notes that defendant's medical conditions are appropriately managed at FCI Beaumont while COVID cases continue to rise in the region where defendant intends to return. The BOP is making every effort to contain the spread of COVID and provide medical care to infected inmates. Defendant states that he intends to reside with his wife and seek employment upon his release, but makes no indication of an intention to self-quarantine. Accordingly, the

court cannot determine that he would be any safer in the community. At any rate he has not shown that he can overcome § 3553(a)'s factors in light of his serious offense and substantial amount of time remaining on his sentence.

### III.
#### CONCLUSION

For the reasons stated above the Motion for Compassionate Release [doc. 151] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 1st day of December, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**